Freedman, J".
This action was brought by the plaintiff, as the assignee of Walter Scott & Co., manufacturers of printing presses, to recover damages for the breach by the defendant of a *143 contract under which Walter Scott & Co. were to build for the defendant a certain printing press. Walter Scott & Co., after having partially completed the press, were, notified by the defendant to suspend all work upon it, and the defendant declined to accept the press that they were then making for him. After the failure to adjust the controversy which had thus arisen, Walter Scott & Co. assigned their claim to the plaintiff. The contract, as established by the pleadings, and the evidence given at the trial, is to be found in the letter of Walter Scott & Co. to the defendant, dated March 26, 1890, and the letter of the defendant, dated March 27, 1890, in answer thereto, and in a certain modification, thereafter made, by which the written contract was modified in so far that Walter Scott & Co. were not to furnish defendant with the stereotype outfit mentioned in.their original proposition, and were, in consequence thereof, to deduct $500 from the original price of $9,000. There being no dispute as to the modification, we may therefore start with the proposition that, the contract having been reduced to writing, its terms cannot be changed by parol testimony, but that parol testimony may be resorted to for the purpose of explaining the meaning of terms which otherwise would remain uncertain or ambiguous. The contract called for one of Walter Scott & Co.’s “ web-perfecting printing presses, to fold either 4 or 8 pages, which will print 7, 8, or 9 columns. The pages to be 26 inches in length. The press to be first class in every respect, and under our [viz. Walter Scott ¿e Co.’s] guaranty, or no sale.” The press was to cut, paste, and fold, etc. By way of explanation of this language the defendant was -permitted at the trial to show, and he did produce testimony to the effect, that some days before he received the letter of March 26th, the plaintiff, then acting as the agent of Walter Scott & Co., called upon him ; that in the course of their conversation the defendant inquired respecting the style and character of the press offered, and the number of sheets of 4 or 8 pages and 7, 8, or 9> columns the press would print, cut, and fold per hour; that in response to that inquiry, and by way of description of what the web-perfecting printing press was, the plaintiff showed to the defendant a certain circular, in which it was stated that the web-perfecting printing press would print, cut, and fold 12,000 sheets of 8 pages, or 24,000 sheets of 4 pages, per hour; that the gearing was accurately cut; that the bearings were large; that studs, friction rolls, etc., were made of steel, and hardened, and that the machine throughout was constructed in the best manner and of the best materials; that the plaintiff also told the defendant that the capacity of the press was 12,000 sheets per hour; that the defendant had no knowledge as to what the press was, other than what he was told by the plaintiff and the circular; that, believing the web-perfecting printing press to be what the plaintiff and the circular stated it was, he agreed to order one; and that he subsequently ascertained that the press which Walter Scott & Co., were constructing for him would not have the capacity represented, inasmuch as it would not be able to print, cut, and fold 12,000 sheets of 8 pages, or 24,000 sheets of 4 pages per *144 hour. In opposition to this testimony the plaintiff showed that the press to be constructed for the defendant was not the press as represented in the circular, but a different and larger one ; that no representation was made that it would be the sort of press as shown upon the circular ; that the circular was not given to the defendant; that the plaintiff did not know how the defendant received the circular; and that no assurance whatever was given with respect to the press to be constructed other than what is contained in the contract itself, viz., the two letters.
These conflicting statements were submitted to the jury with the instruction that, if they believed defendant’s version, the defendant was entitled to a verdict; but that, if they believed plaintiff’s version, the conflict should be decided in plaintiff’s favor. The charge of the trial judge upon the branch of the case was exceedingly favorable to the defendant, but the jury found for the plaintiff. In view of all the circumstances bearing npon this branch of the case, it cannot be held that the finding of the jury was against evidence or the weight of the evidence. That being so, the finding of the jury effectually disposes of the further claim of the defendant that, owing to the mutual mistake and oversight of both contracting parties, the representations as to the capacity of the press claimed by the defendant to have been made as hereinbefore stated were omitted from the letters.
In the course of the trial the defendant also claimed that he was induced to enter into the contract in question by representations to the effect that the press to be made for him would be similar to a press constructed by Walter Scott & Co. for the Hew York Dispatch and considerable evidence was given by both sides as to the capacity of the press of the HeW York Dispatch. The evidence undoubtedly showed that such a representation had been made, and that the latter press was a counterpart of the one to be manufactured for the defendant; that the two presses were substantially alike in their mechanical arrangement; and that the press of the Hew York Dispatch did not have the capacity of printing, cutting, and folding 18,000 sheets of 8 pages per hour. The real difficulty appeared to arise from the fact that, while both machines, as to mechanism, were substantially the same as the machine represented in the circular hereinbefore referred to, they were different as to' size. The circular represented a machine for a 22-inch sheet, while the other two machines were intended to run a 26-incli sheet. The defendant had insisted upon a machine for a 26-inch sheet. The consequence was that the cylinder had to be much larger, the frame larger, and the whole press larger; and that, inasmuch as it takes more time for a big cylinder to go around and make the same impression that it does for a small cylinder, the speed became reduced. But the whole controversy, in so far as it turned upon comparisons between the press of the Hew York Dispatch and the press constructed for the defendant, has become immaterial in view of the finding of the jury that no representation whatever had been made that the press to be manufactured for the defendant should have the capacity contended for by the defendant, .and by reason of the further fact that there was no evidence upon *145 which the jury could have hound that before the execution of the contract it had been represented to the defendant that the Hew York Dispatch press had the capacity of printing, cutting, and folding "12,000 sheets of 8 pages per hour. For the same reasons it was not error that the trial judge refused to grant defendant’s motion to strike out the testimony of Walter Scott to the effect that the press in course of construction for the defendant, if it had been completed in accordance with defendant’s order, would have been capable of turning out 12,000 sheets of 8 pages per hour. Moreover, the testimony had been given without objection on the part of the defendant at the time, and in the end the case was submitted to the jury on the assumption that the press, if completed, would not have had any such capacity. The only substantial grievance of the defendant throughout the trial having been that the press, if completed, would not have come up to the representations made to him concerning its capacity to do a certain amount of work per hour, and the jury having found that no such representations were made at the time of the making of the contract, the only remaining questions relate to the measure of damages.
The action is not based on the completion of the contract, but upon the prevention of its perform anee. The measure of damages in such a case is such damages as will compensate the plaintiff for being deprived of the benefits of the contract. Ordinarily, the difference between the contract price and the market value of the property constitutes such compensation. Todd v. Gamble, 67 Hun, 38; 51 St. Rep. 619; Windmuller v. Pope, 107 N. Y. 674; 12 St. Rep. 292. In the case at bar it was shown, however, that the press in question, as it was when the work upon it was stopped by order of the defendant, had no market value except as metal; that it would have cost about $600 to finish it, and about $200 more to deliver and set it up; but that, if it had been finished, owing to its unusual size, it would have had no market value except as metal. Under the circumstances of this case the evidence was competent, and upon it the jury were properly instructed that, if they found a verdict for the plaintiff, they should deduct from the contract price of $8,500 the value of the machine as it was at the time the work was stopped, and the cost necessary to complete it, and to set it up in place. The charge, as a whole, guarded every right which the defendant had, and I can see no error in the refusals to charge otherwise. Upon the evidence and the charge as delivered the verdict of the jury for $5,400 was not excessive. If anything, it was inadequate, but of this the defendant cannot complain. Upon the whole case no reason appears which would justify a reversal. The judgment and order should be affirmed, with costs.